WATSON v. NEW YORK CONTRACTING CO., PENNSYLVANIA TERMINAL.

(Supreme Court, Appellate Division, Second Department.   June 18, 1908.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—DERRICK.
    Where a derrick, by the fall of which decedent was killed, had been in use for several months at defendant's repair headquarters in connection with an excavation, which covered a space of half a mile in length and two blocks in width, the derrick should be regarded as a permanent appliance, as distinguished from a mere temporary one, liable to be moved at intervals by men engaged in the particular work.

2. SAME—"ACTIONABLE NEGLIGENCE."
    "Actionable negligence" consists in a failure to exercise that reasonable degree of care which the master owes under the circumstances to his employés.      '
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 139.
    For other definitions, see Words and Phrases, vol. 1, pp. 148–149; vol. 8, p. 7563.]

3. SAME—CARE REQUIRED.
    A master is not bound to exercise the highest possible degree of care to avoid injury to his servants, nor such a degree of care which it may be shown would have prevented the accident, but only that reasonable care which ordinarily prudent men under the same circumstances would have used, looking at the situation in advance of the accident.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 139.]

4. EVIDENCE—SUBJECTS OF EXPERT TESTIMONY.
    Decedent was killed by the fall of a derrick, which had been in use for several months, supported in five directions by guy wires, all of which were in proper condition and adequate to the use intended. The fifth wire was attached to the corner of a temporary building erected to be used as a machine shop, being passed around the corner post of the building, which consisted of two 3x8-inch yellow pine timbers bolted together. This timber was braced above and below the point where the wire was fastened, leaving space between the braces of about a foot. During the use of the derrick it lifted a load of about 6,000 pounds, which was within its capacity, and the accident occurred by the guy wire pulling out such 1-foot section of the post between the braces. Held, that expert testimony as to whether the timbers used as a corner post were calculated to withstand the strain placed on them, determined partly from a formula and partly from the witness' own experiments, was inadmissible.
    Miller, J., dissenting.

Appeal from Trial Term.

Action by Mary Watson, as administratrix of the estate of Hugh Watson, deceased, against the New York Contracting Company, Pennsylvania Terminal. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial on the minutes, it appeals. Reversed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and MILLER, JJ.

John Conway Toole, for appellant.

Richard J. Donovan (Herbert D. Cohen, on the brief), for respondent.

WOODWARD, J. The plaintiff's intestate was injured so severely that he died on the same day by the falling of a derrick which was being used by the defendant in hoisting cars from one track to another for the purpose of making repairs upon the cars. These cars were used in connection with the work of excavating for the Pennsylvania Railroad's tunnel, between Thirty-First and Thirty-Third streets and between Tenth avenue and Seventh avenue, in the borough of Manhattan. Plaintiff's intestate was employed in making repairs. On the 17th day of July, 1906, a car was being lifted from the main track to what was known as the "cripple track," and when the car was about one foot from the ground one of the guys supporting the derrick gave way and the derrick fell, with the result above stated. It appears from the evidence that the derrick had been in use for several months in this particular place; that this was the headquarters for making the repairs in connection with this excavation, which covered a space of about half a mile in length and about two blocks in width; and we are of the opinion that this derrick, under the circumstances, was to be considered of a permanent character, and one for which the master was liable, both in its construction and maintenance, as distinguished from a mere temporary derrick, liable to be moved at intervals by the men engaged in the particular work. It appears that this derrick, which, as we have already stated, had been in use for several months, was supported in five different directions by guy ropes or wires, all of which appear to have been in perfect condition and entirely adequate to the use to which they were put. The fifth of these guy wires was attached to the corner of the temporary building erected to be used as a machine shop. The corner post of this building was made of two 3x8-inch yellow pine timbers, bolted together, and the guy wire was passed around this timber and fastened with a clamp. In addition to the timber, there were two braces, one above and one below the point where the guy wire was fastened, these braces being about one foot apart, and the accident happened by the guy wire literally pulling out this 1-foot section of the 3x8 yellow pine timber between these two braces. The question of negligence arose, then, as we understand it, whether the master, in constructing and supporting this derrick, exercised that reasonable degree of care which the law imposes under such circumstances. It is conceded that the load which this derrick was designed to carry was about 6,000 pounds. This was about the weight which was suspended at the time of the accident, and the evidence shows that within one month

of the time the derrick had actually handled a load of 16,000 pounds, and for a period of five months or more it had been handling loads varying from 6,000 to 16,000 pounds, though whether under exactly the same conditions the evidence does not disclose.

The plaintiff called an expert witness upon the question of whether the timbers used as a corner post were calculated to withstand the strain put upon them by the raising of the load of the derrick, and the important question upon this appeal is whether such expert evidence was proper in this case. From an examination of the evidence it is clear that without the aid of expert evidence there would have been little foundation, if any, for the verdict of the jury. The only possible evidence of negligence is to be found in the fact, demonstrated by the fact of the accident, that two 3x8 yellow pine timbers, braced above and below the point of contact, were not strong enough to sustain the strain put upon them at the particular moment of this accident. The expert evidence practically affords no further light. It is, in effect, that the strain of raising 6,000 pounds with the derrick in use, and under the particular circumstances, was about 8,000 pounds on the point of contact with the timbers, and he concludes, by a process of reasoning and calculation which is not at all clear, and which seems to be based partly upon a formula and partly upon the witness' own experiments, that the resistance of the timbers was only about 6,000 pounds. So far as the formula is concerned, it seems to indicate a resistance of about 9,000 pounds; but when modified by the experiences of the witness he reaches 6,000 pounds, and, of course, a strain of 8,000 pounds would produce the result which was actually produced, literally pulling out this one foot of timber. But is this the test of negligence? Is the duty of the master measured by the facts as they appear after the accident, even though this result is in harmony with the mathematical formula used by the witness? Actionable negligence, as we understand it, consists in a failure to exercise that reasonable degree of care which the master owes under the circumstances to his employés. He is not bound to exercise the highest possible degree of care. He is not bound to use that degree of care which it may be shown would have prevented the accident. He is only bound to use that reasonable degree of care which ordinarily prudent men under the same circumstances would or should have used, and this is to be determined by what such reasonably prudent men, looking at the situation in advance of the accident, would say was the right and proper thing to do. Tested by this standard, what has expert evidence to do with this question? What difference does it make that the strain was 8,000 pounds under the particular circumstances of this accident, and that the power of resistance was only 6,000 pounds?

The question is, what would the ordinarily prudent man, looking at this derrick and its fastenings, have said and done in reference to it, in the prosecution of his own business, and with a proper regard for the safety of his employés? The fact is obvious that the accident occurred; that the timbers were not equal to the strain. But would men ordinarily prudent have anticipated this result and have guarded against it? The average juror knows the relative strength of woods, and of the mechanical strains under given conditions, practical-

ly as well as the expert. He knows what he would do under the circumstances—what he would consider an adequate fastening, having the welfare of the employé and the success of his own business at heart; and this is the real test. Unless we are to make the mere happening of the accident evidence of negligence, there is practically no justification for expert evidence of the character here presented   Here was a perfectly clear situation. The defendant had erected this derrick. It had provided proper materials and proper fastenings for each of its guy wires, with the possible exception of this one. Here it had attached to the corner of a building. The building was substantial enough to withstand the strain. The point of contact was the corner post, fully supported by braces. The guy wire was properly fastened, and did not slip, and the only question was whether this point of contact was, in the judgment of reasonably prudent men, strong eno...gh to serve its purpose. For several months the derrick had been used in doing the same general character of work, and it had actually raised more than double the load within one month. Where was the evidence of negligence, except in the mere question of what reasonably prudent men would have thought of this fastening? How is it competent to show a mathematical calculation, supplemented by alleged personal experiments, which merely proves—what the accident itself demonstrates—that this fastening was not strong enough for this particular strain? It is reaching by indirection what is not permitted directly, and, in the absence of controlling authority, ought not to be announced as the law.

The court erred, in our opinion, in permitting expert evidence upon this question, and the judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except MILLER, J., who dissents.